IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:12cv00413-WO-JEP |
| | ) | (Bk. No. 09-50141) |
| PETER L. TOURTELLOT, | ) | |
| | ) | |
| Trustee. | ) | |

### UNITED STATES OF AMERICA'S BRIEF IN OPPOSITION TO THE TRUSTEE'S OBJECTION TO TTB's CLAIM FOR ADMINISTRATIVE EXPENSES AND MOTION FOR DETERMINATION OF TAXES

The United States of America, by its undersigned counsel, and on behalf of the Alcohol and Tobacco Tax and Trade Bureau (TTB), files this brief in opposition to the Trustee's Objection to its claim for administrative expenses and motion for determination of federal excise taxes. The United States is submitting with this opposition the Declarations of Richard M. Weimer and Todd B. Moon.

### ISSUE

The federal excise tax on large cigars is a percentage of their sale price. The Fair and Equitable Tax Reform Act of 2004 (FETRA) provides that the Secretary of Agriculture is to impose tobacco buyout assessments on manufacturers of tobacco products such as the debtor. The Trustee acknowledges that the debtor includes estimates of these assessments in the prices it charges its customers for its large cigars. Should the

debtor be permitted to exclude the amount of the tobacco buyout assessment from its sale price of large cigars for purposes of calculating the federal excise tax on these products?

## STATEMENT

TTB, a bureau of the United States Treasury Department, enforces Chapter 52 of the Internal Revenue Code of 1986 (Title 26 of the United States Code, "IRC"). Chapter 52 deals with federal excise taxes on tobacco products and cigarette papers and tubes. Absent some exemption, manufacturers of tobacco products must pay a federal excise tax on the tobacco products they manufacture. *See, e.g*., 26 U.S.C. § 5703.

The tobacco product at issue here is a "large cigar", for tax purposes. A "cigar" is "any roll of tobacco wrapped in leaf tobacco or in any substance containing tobacco (other than a roll of tobacco that is a cigarette within the meaning of subsection (b)(2)." 26 U.S.C. § 5702(a). Cigars, for tax purposes, are classified as either "large" or "small," depending on whether the cigars weigh more or less than three pounds per thousand. 26 U.S.C. § 5701(a). The current tax for "large cigars" is equal to 52.75 percent of the price for which sold, not to exceed 40.26 cents per cigar. *See* 26 U.S.C. § 5701(a)(2). Section 5702(l) provides guidance on the "determination of price on cigars."

<u>How price is determined</u>

Prior to January 1, 1991, the excise tax on large cigars was calculated based on the manufacturer's suggested wholesale list price *including* the Chapter 52 excise tax. *See* 26 U.S.C. § 5702(m) (1990). The Omnibus Budget Reconciliation Act of 1990, P.L. 101-508, changed the methodology for computing the large cigar excise tax to a percentage of

2

its actual sale price. 26 U.S.C. § 5701(a)(2). But there are certain specific exclusions from the Section 5701(a)(2) sale price. 26 U.S.C. § 5702(l) states:

> In determining price for purposes of section 5701(a)(2)--
> (1) there shall be included any charge incident to placing the article in condition ready for use,
> (2) there shall be excluded–
>     (A) the amount of the tax imposed by this chapter or section 7652, and
>     (B) if stated as a separate charge, the amount of any retail sales tax imposed by any State or political subdivision there of or the District of Columbia, whether the liability for such tax is imposed on the vendor or the vendee, and
> (3) rules similar to the rules of section 4216(b) shall apply.

Given that the methodology for computing the "sale price" changed, the Bureau of Alcohol, Tobacco and Firearms ("ATF") (TTB's predecessor agency) promulgated regulations explaining the application of the new pricing methodology.

27 CFR § 270.22a(a), promulgated in 1990, states as a "general rule" that "the tax imposed on large cigars is computed based on the price for which the large cigars are sold by the manufacturer."

27 CFR § 270.22a(b) states:

> (b) *Price for which sold*. The "price" for which cigars are sold includes the total consideration paid for the cigars. Any charge which is made incident to placing the cigars in condition ready for use is included in the sale price. Similar rules to 26 U.S.C. § 4216(a) and the regulations thereunder, relating to charges to be included in the price and excluded from the price shall apply.

ATF also issued Industry Circular 91-3[1] to inform tobacco products manufacturers

---

[1] The United States is submitting a copy of Industry Circular 91-3 with this brief.

3

of these new regulations. This Circular reiterated that rules similar to Section 4216(a) and its regulations were to apply in determining the price of large cigars.

In 1999, ATF modified its regulations somewhat to reflect tax increases on tobacco products imposed by section 9302 of the Balanced Budget Act of 1997 (P.L. 105-33). But the general rule regarding how the price of large cigars is to be determined remained the same. 27 CFR § 40.22(a) states, "The tax imposed on large cigars is computed based on the sale price (the price for which the large cigars are sold by the manufacturer)."

The TBO Assessment

In addition to federal excise taxes, since 2005 tobacco product manufacturers must also pay the Tobacco Transition Assessment (also known as the "Tobacco Buy-Out" or "TBO") to the United States Department of Agriculture (USDA) Commodity Credit Corporation (CCC).[2] The TBO Assessment goes into a trust fund that makes payments to U.S. Tobacco Growers. The total amount to be distributed to U.S. Tobacco Growers is capped at $10.14 billion over ten years. P.L. 108-357 § 627.

FETRA provides that the Secretary of Agriculture is to impose quarterly assessments on each manufacturer of tobacco products. Id. at § 625(b)(1). These

---

[2] The TBO was created by the Fair and Equitable Tobacco Reform Act of 2004 ("FETRA"), Pub. L. 108-357, Title VI, 118 Stat. 1536 (Oct. 22, 2004) (codified at 7 U.S.C. § 518, et seq.). FETRA repealed the tobacco marketing quota and related price support programs authorized by Title III of the Agricultural Adjustment Act (AAA) of 1938 and the Agriculture Act of 1949. The TBO is used to make transition payments to tobacco quota holders and producers from 2005-2014.

assessments are to be sufficient to cover the payments to the tobacco growers. Id. at § 625(b)(2). A manufacturer's TBO assessment is based on its share of the market for each particular class of tobacco products it manufactures. A manufacturer's quarterly TBO assessment is based on its previous quarter's market share.[3]

Some tobacco manufacturers questioned whether the amount of the price attributable to the expected TBO Assessment could be excluded from the sale price of the large cigars. To answer these questions, on May 18, 2010, TTB issued guidance on its public website, http://www.ttb.gov. It specifically stated that this assessment could <u>not</u> be excluded from the price of large cigars. This same guidance remains on its website today.[4]

TTB's Audit of Alternative Brands

In August 2011, TTB's Tax Audit Division conducted an audit of Alternative Brands. The auditors determined that Alternative Brands excluded its estimate of the TBO from the sale price of large cigars from April 2009 through July 2011, the end of the audit period. Alternative Brands knew before the auditors left the premises that TTB disagreed with its sale price calculation. (Weimer Dec. ¶ 6.) The auditors also found other errors with the excise tax computation, including a failure to exclude allowable

---

[3] The pertinent regulations can be found at 7 C.F.R. §§ 1463.3 through 1463.8. The national assessment on large cigars is based on the volume removed or imported into the United States.

[4] A copy of this guidance is being submitted with this brief, and it may be accessed at http://www.ttb.gov/tobacco/tobacco-faqs.shtml#t25.

freight charges.[5] (Id. ¶¶ 11-14.)

It also appeared that, at least for some periods, Alternative Brands overestimated the amount of their TBO assessment and as a result, it excluded more from the sales price of their large cigars than the amount of their TBO assessment. For example, in the third quarter of 2009 (July, 2009 through September, 2009) it appears that Alternative Brands reduced the sales price of their large cigars by $.70 per carton for federal excise tax purposes, but their TBO assessment for that period was $.62 per carton. (Id. ¶¶ 8, 9.) As a result, even if its exclusion of the amount of the TBO assessment were correct, and as will be explained it is not, Alternative Brands would still be liable for additional excise tax, because it apparently excluded from its sales price more than the TBO assessment it paid.

Alternative Brands' failure to include its estimated TBO in the sale price for which it sold its large cigars resulted in an underpayment in excess of $2 million for the audit period. Based on this error plus other issues found by the TTB audit, statutory interest and penalties, Alternative Brands owes a total of $2,618,981.43 for the audit period. (Moon Dec. ¶ 9, Ex. A). This amount includes a credit for the allowance of an exclusion for shipping charges. (Weimer Dec. ¶ 13.)

<u>Alternative Brands' Refund Claims</u>

---

[5]The auditors found unreported removals of tobacco products, improper labeling on exported product, improper documentation of exports, late returns, failure to report all product manufactured, failure to report product consumed on premises, failure to maintain a large cigar price list, and various other record-keeping issues. (Weimer Dec. ¶ 14, Ex. C.)

6

Case 1:12-cv-00413-TDS-JEP   Document 10   Filed 05/07/12   Page 6 of 17

Alternative Brands has also filed refund claims. It filed a claim for $32,582.94 on March 25, 2008, which TTB approved and applied as a credit on Alternative Brands' excise tax return for the period ending April 15, 2008. (Moon Dec. ¶ 10.) It also filed other refund claims on February 22, 2012 totaling $85,291.25. (Id. ¶ 11.) These claims are also allowable, and the government will seek to set off these claims against TTB's administrative claim against Alternative Brands.

## ARGUMENT

### THE TBO ASSESSMENT MAY NOT BE EXCLUDED FROM THE SALE PRICE OF LARGE CIGARS.

In this case there is one matter upon which the parties agree: Alternative Brands passes along the expected cost of its TBO assessment to its customers. The trustee is crystal clear about that:

> ABI has included the TBO tax owed on its cigarettes, roll-your-own tobacco and cigars in the sales price of those items and collected that amount from its customers since the TBO tax was enacted. Trustee's Memorandum at 7.

26 U.S.C. § 5701(a)(2) provides that the tax on large cigars shall be equal to 52.75% of the "price for which sold." TTB's regulations explain that "sale price" is quite simply "the price for which the large cigars are sold by the manufacturer." 27 C.F.R. § 40.22.

26 U.S.C. § 5702(l)(1) states that "price" for purposes of Section 5701(a)(2) must include any charge incident to placing the article in condition ready for use. But "price"

7

is not limited to those charges, because under Section 5702(l)(1) those charges are "included" in price, and 26 U.S.C. § 7701(c) explains:

> The terms "includes" and "including" when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined.

See In re Joplin, 882 F.2d 1507, 1511 (10th Cir. 1989)(the term "including" in 26 U.S.C. § 641(a) does not limit income subject to tax to the types of income listed in Section 641 (a)(1), (a)(2), (a)(3) and (a)(4))

Section 5702(l) does allow specific exclusions from the "price" of the cigars for computation of the excise tax:

> 1) the amount of tax imposed by Chapter 52 of the IRC,
> · 2) the amount of tax imposed by 26 U.S.C. § 7652, which concerns shipments to the United States from Puerto Rico and the Virgin Islands, and
> · 3) if stated as a separate charge, the amount of any retail sales tax imposed by any State or political subdivision thereof, or the District of Columbia, whether the liability for such tax is imposed on the vendor or vendee.

Section 5702(l)(2). No other exclusions from sales price are provided in Section 5702(l).

The question here is not whether the expected cost of the TBO is part of the actual sale price of Alternative Brands' large cigars – the Trustee concedes it's included in the price charged to its customers – but whether Alternative Brands' expected cost of the TBO assessment is the type of expense that may be excluded from the sales price of the large cigars. It is not, and therefore it may not be

8

excluded from the sale price upon which the federal excise tax is calculated.

A - The TBO Assessment is not a tax imposed by chapter 52 of the Internal Revenue Code.

The trustee devotes several pages of its memorandum and the entirety of its supplemental memorandum to develop its position that it may exclude the expected cost of the TBO assessment from its sale price under 26 U.S.C. § 5702(l)(2)(A). It asserts that the TBO assessment should be considered a "tax imposed by this chapter." Section 5702(l)(2)(A). The trustee is wrong.

26 U.S.C. § 5702 is contained within chapter 52 of the Internal Revenue Code (Title 26). Chapter 52 is concerned with excise taxes on "Tobacco Products and Cigarette Papers and Tubes" and encompasses Sections 5701 through 5763 of the Internal Revenue Code.

Congress has specifically provided that the Secretary of the Treasury is to assess and collect these taxes, and it has provided mechanisms such as tax liens and levies for the Secretary of the Treasury to effect their collection. 26 U.S.C. § 7701(a)(11)(B) provides that for purposes of the Internal Revenue Code, "The term 'Secretary' means the Secretary of the Treasury." Congressional statutes provide that federal tax liens arise on assessment of such unpaid excise taxes, and these liens attach to all of the taxpayer's property and rights to property. 26 U.S.C. §§ 6321, 6322. Congressional statutes also authorize the Secretary of the Treasury to request the Attorney General to bring an action to enforce these liens. 26 U.S.C.

9

§ 7403. Alternatively, Congress has authorized the Secretary of the Treasury to collect such excise taxes administratively by issuing a levy. 26 U.S.C. § 6331.

This is distinct from the TBO assessment. Congress specifically provided that the Secretary of Agriculture, not the Secretary of the Treasury, is to impose this assessment. P.L. 108-357 §§ 621(11), 625(b)(1). And the Secretary of Agriculture does not have the tools available to collect this assessment that the Secretary of the Treasury has to collect chapter 52 excise taxes. In enacting FETRA, Congress did not provide that the Secretary of Agriculture could collect the TBO assessment from recalcitrant tobacco manufacturers through statutory liens or through administrative levy, means that the Secretary of the Treasury has available to collect chapter 52 excise taxes.

Accordingly, the TBO assessment is not a tax imposed by chapter 52 of the Internal Revenue Code. Congress specifically provided that the Secretary of Agriculture was to impose and collect this assessment, not the Secretary of the Treasury. And Congress did not give the Secretary of Agriculture the tools to collect this assessment that it gave to the Secretary of the Treasury to collect excise taxes on tobacco.

As a result, the Trustee's reliance on Guest v. Commissioner, 175 F.2d 868 (5th Cir. 1949), and Marx v. Commissioner, 13 T.C. 1099 (1949), is unavailing. Those cases held that section 6 of the Current Tax Payment Act of 1943 should be

regarded as imposing a tax under chapter 1 of the Internal Revenue Code even though section 6 was not codified in that chapter.

Marx explained that "the Current Tax Payment Act of 1943 intended to forgive rather that increase taxes," and "A method of computation to accomplish these ends was provided in section 6." Marx at 1103. Additionally, it held that the language of section 6 "was apparently intended to amend the tax-imposing sections of chapter 1." Id.

Here, by contrast, FETRA provides that the TBO assessment is to be imposed and collected by a different cabinet official from the cabinet official who is to collect chapter 52 taxes, and it also provides that the TBO assessment is to be collected in a manner that is different from the collection procedure for collecting chapter 52 taxes.

Similarly, the Trustee's reliance on In re International Tobacco Partners, Ltd., 2012 WL 1158734 (Bankr. E.D.N.Y. 2012), is misplaced. There, the bankruptcy court held the TBO assessment was to be treated as a priority claim under 11 U.S.C. § 507(a)(8)(E)(ii). This Section provides for priority treatment of certain excise tax claims. But even if the TBO assessment were considered an excise tax under this Bankruptcy Code Section, it does not follow that it is a "tax imposed by" chapter 52 of the Internal Revenue Code. To regard it as such a tax would result in rewriting FETRA.

    B - The TBO is not a charge that may be excluded from sales price under Section 4216(a).

11

The Trustee alternatively asserts that the TBO assessment is a charge that may be excluded from sale price under 26 U.S.C. § 4216(a). He is wrong.

Section 4216(a) contains rules for determining price for purposes of calculating the excise taxes contained in Chapter 32 of the Internal Revenue Code. Chapter 32 is entitled "Manufacturers Excise Taxes," and it encompasses sections 4064 through 4227 of the Internal Revenue Code.[6]

Section 4216(a) is not referenced in Section 5702(l), but TTB has looked to it to interpret what charges are to be included in and excluded from sale price for purposes of calculating the federal excise tax on large cigars. See Industry Circular 91-3. Section 4216(a) states:

> In determining for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. A transportation, delivery, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Secretary in accordance with the regulations.

Contrary to what Alternative Brands argues, nothing in Section 4216(a) provides that manufacturers may exclude all expenses that are not directly tied to the actual manufacturing of a product. If that were the case, all non-manufacturing

---

[6]Chapter 32 imposes excise taxes on various articles, including, but not limited to, firearms and ammunition (26 U.S.C. § 4181), sporting goods (26 U.S.C. § 4161), vaccines (26 U.S.C. § 4131), and coal (26 U.S.C. § 4121).

12

overhead would potentially be subject to exclusion. Like other overhead expenses, the TBO assessment is a necessary cost of doing business in domestic commerce. Absent some other source of funds, a large cigar manufacturer will have to plan for this expense in the price of the product it sells, just as it plans for employee salary expenses and federal income tax.

The holding of F.W. Fitch Co. v. United States, 323 U.S. 582 (1945), makes that clear. There, the taxpayer asserted that its selling and advertising costs should be excluded from "price for which an article is sold" for purposes of this statute (then codified at IRC § 3441(a)), because those expenses fell within the term "other charge" for purposes of this statute. The Supreme Court held that those charges may not be excluded from the sale price. In construing this statute and relying on the legislative history associated with its enactment, the Court held:

> [A]ny additional charge which a purchaser would not be required to pay if he accepted delivery of the article at the factory or place of production may be so excluded. See H.Rep. No. 708 (72d Cong., 1st Sess.) p. 37; S.Rep.No. 665, Part 3 (72d Cong., 1st Sess.) p. 3; H.Conf.Rep. No. 1492 (72d Cong., 1st Sess.) p. 22. Id. at 584.

Here, if one of Alternative Brands' customers took delivery of large cigars at Alternative Brands' factory, the price the customer would pay would include Alternative Brands' estimate of the TBO assessment. Alternative Brands would have to include this cost in its sale price to that customer so that it would have sufficient funds to be able to pay it. By contrast, if that same customer picked up the large cigars at the factory, there would be no reason for Alternative Brands to include a

13

cost to ship those cigars in its sale price, because Alternative Brands would not be incurring such a cost.[7]

Accordingly, Section 4216(a) does not permit Alternative Brands to exclude its estimated cost of the TBO assessment from its sale price of large cigars.

C - The refunds to which Alternative Brands is entitled should be setoff against TTB's administrative claim for federal excise taxes.

The trustee asserts Alternative Brands is entitled to $110,481.76 of refunds. The trustee is wrong. He is entitled to $85,291.25 of refunds, but that amount should be setoff against the administrative excise tax liability that is well in excess of $2 million.

The trustee is incorrect for two reasons. First, he is not entitled to the refund of $32,582.94 that he seeks. Alternative Brands applied that amount as a credit on the federal excise tax return it filed for the period ending April 15, 2008. (Moon Dec. ¶ 10.) Second, Alternative Brands is entitled to a refund of $7,392.43 that the Trustee did not list. (Id. ¶ 11.) Netting these two amounts and subtracting the result from $110,481.76 results in Alternative Brands being entitled to $85,291.25 of refunds.

The Trustee also asserts that Alternative Brands is also entitled to refunds for

---

[7]As detailed in Richard Weimer's Declaration, TTB discovered during its audit that Alternative Brands included in its sale price costs to ship large cigars to its customers. (Weimer Dec. ¶ 13.) TTB determined those costs should be excluded from sale price, and allowed Alternative Brands a credit against the excise tax liablility created by Alternative Brands' exclusion of the estimated TBO assessment from sale price. (Id.)

14

Case 1:12-cv-00413-TDS-JEP   Document 10   Filed 05/07/12   Page 14 of 17

federal excise tax paid on shipping costs that it included in the sale price of its large cigars. The Trustee is wrong. As detailed in Richard Weimer's Declaration, TTB identified that Alternative Brands was including such costs in its sale price during the audit, and as a result, it gave Alternative Brands a credit which was applied against Alternative Brands' excise tax liability. (Weimer Dec. ¶ 13.) If this credit had not been applied, Alternative Brands would owe more as a result of its exclusion of its estimated TBO assessment from its sale price.

       D - <u>Alternative Brands excluded more than the TBO assessment.</u>

Finally, even if the Trustee's position regarding exclusion of the TBO assessment were correct, Alternative Brands would still owe federal excise tax, because, at least for certain periods, it excluded more from its sale price than the amount it paid for the TBO assessment. From April, 2009, through February, 2011, Alternative Brands excluded $.70 per carton from its sale price of large cigars when computing its federal excise tax. $.70 per carton was its estimate of its TBO assessment. (Weimer Dec. ¶ 8.) For at least some of these periods the amount of Alternative Brands' actual TBO assessment was less. For the third quarter of 2009, Alternative Brands' records indicate it was assessed $.62 per carton of large cigars, and for the third quarter of 2010, its records indicate it was assessed $.57 per carton. (Id. ¶ 9, Ex. B.) Accordingly, during the third quarters of 2009 and 2010, Alternative Brands excluded $.08 and $.13 more per carton from its sale price than it paid for the TBO assessment. There is no basis for its exclusion of these amounts. Further

15

discovery would be needed to ascertain whether Alternative Brands excluded more than its actual TBO assessments for other periods and the amount of such additional exclusions.

## CONCLUSION

For the foregoing reasons the Trustee's Objection and Motion should be denied and TTB's administrative claim should be allowed.

Date: May 7, 2012.

                                              RIPLEY RAND
                                              United States Attorney

                                              KATHRYN KENEALLY
                                              Assistant Attorney General
                                              Tax Division

By: /s/Lawrence P. Blaskopf
LAWRENCE P. BLASKOPF
Trial Attorney, Tax Division
U.S. Department of Justice
P. O. Box 227
Ben Franklin Station
Washington, D. C. 20044
Tel. No. (202) 514-9642