IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-CV-413 |
| | ) | (Bank. No. 09-50141) |
| PETER L. TOURTELLOT, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

THOMAS D. SCHROEDER, District Judge.

This matter arose in the Bankruptcy Court and is before this court upon withdrawal of reference pursuant to 28 U.S.C. § 157(d).[1]  (Doc. 15.)  At issue is the "Application for Administrative Expenses" ("Claim") filed by the United States Department of Treasury's Alcohol and Tobacco Tax and Trade Bureau ("TTB" or Government) seeking payment of post-petition federal excise taxes on large cigars sold by the Debtor, Alternative Brands, Inc. ("Debtor"), as well as the "Objection to Claim for Administrative Expense And Motion For Determination of ABI's Federal Excise Taxes" ("Objection") filed by the Debtor's Chapter 11 bankruptcy trustee.  (Doc. 6-1 (Claim); Doc. 6-4 (Objection).)  For the reasons set forth below, the court

---

[1]  The court specifically withdrew reference from the Bankruptcy Court "for the purpose of this court's determination of the application of 26 U.S.C. §§ 5701 and 5702(*l*) to the Government's claim for administrative expenses to the extent it is made the subject of the Trustee's objection."  (Doc. 15 at 10-11.)

denies the Objection and returns the case to the Bankruptcy Court for determination of the Claim.

## I. BACKGROUND

### A. Procedural Background

The Debtor manufactures tobacco products, including large cigars.[2] On January 28, 2009, the Debtor and its related companies filed for protection under Chapter 11 of the Bankruptcy Code. The bankruptcy case has taken several twists and turns which, while not relevant here, led to the appointment of Defendant Peter L. Tourtellot as Chapter 11 Trustee for the Debtor ("Trustee"). After the filing of the Trustee's Joint Plan of Reorganization, the TTB filed its Claim against the Debtor for alleged unpaid excise taxes relating to its large cigars for an audit period of April 1, 2009, through July 31, 2011.

The dispute before the court relates to the calculation of excise taxes under federal law. The Internal Revenue Code imposes a federal excise tax on large cigars manufactured in or imported into the United States for the domestic market. The tax is set, with a limitation not relevant here, at a percentage of "the price for which [the product is] sold." 26 U.S.C.

---

[2] A "cigar" is "any roll of tobacco wrapped in leaf tobacco or in any substance containing tobacco." 26 U.S.C. § 5702(a). "Large cigars" are cigars "weighing more than 3 pounds per thousand." Id. § 5701(a)(2). The only other type of cigar is "small cigars," "weighing not more than 3 pounds per thousand." Id. § 5701(a)(1).

2

§ 5701(a)(2).  The parties disagree as to whether assessments against the Debtor under the Fair and Equitable Tobacco Reform Act of 2004, 7 U.S.C. § 518 et seq. ("FETRA"), must be included in determining the price of the large cigars upon which the excise tax is calculated.  Inclusion of the FETRA assessment increases the price of the product and thus the amount of excise tax owed.  Here, the Debtor included its estimated FETRA assessments in the price it charged customers of its large cigars but excluded the assessments in calculating its federal excise tax under 26 U.S.C. § 5701(a)(2).  TTB argues that the Debtor's FETRA assessments must be included in the cigar price for determining federal excise taxes and that the Debtor's failure to do so resulted, together with "other issues," in an underpayment of $2,117,924.98 during the audit period.[3]

**B.  The Fair and Equitable Tobacco Reform Act of 2004**

Given the nature of the parties' dispute as to whether the Debtor's FETRA assessments must be included in, or are expressly excluded from, the "price for which [large cigars are] sold" and thus on which the federal excise tax is calculated, a review of FETRA is helpful.

Congress enacted FETRA, also referred to as the tobacco buy-out, as Title VI of the American Jobs Creation Act of 2004,

---

[3]  The Debtor reports paying $13,833,891 in federal excise taxes and $6,908,751 in FETRA assessments on its large cigars during the audit period.  (Doc. 6-5 at 1.)

3

Pub. L. 108-357, 118 Stat. 1418, 1524 *et seq.*, to terminate long-standing federal tobacco and price support programs. *See* Pub. L. 108-357, Title VI, Subtitle A. To ease the transition away from a system of quotas, price controls, and subsidies in existence since the Great Depression, FETRA provides for transitional payments to tobacco quota holders and to producers of tobacco. *See id.* Subtitle B; *Prime Time Int'l Co. v. Vilsack*, 599 F.3d 678, 679-80 (D.C. Cir. 2010) (noting FETRA's purpose). FETRA, like the quota and price support loan programs it replaces, is codified in Title 7 ("Agriculture") of the United States Code.

To finance these transitional payments to quota holders and tobacco producers, FETRA imposes assessments on tobacco manufacturers and importers for a ten-year period from fiscal year 2005 through fiscal year 2014. *See* 7 U.S.C. §§ 518a(e)(2), 518d(b), (k). These assessments are deposited into the Tobacco Trust Fund, which is administered by the federally-chartered Commodity Credit Corporation, a corporation within the U.S. Department of Agriculture.[4] *Id.* §§ 518d(b)(3), 518e(a). The

---

[4] *See Neese v. Johanns*, 518 F.3d 215, 217 n.3 (4th Cir. 2008); 15 U.S.C. § 714 (creating a "body corporate to be known as Commodity Credit Corporation . . . , which shall be an agency and instrumentality of the United States, within the Department of Agriculture, subject to the general supervision and direction of the Secretary of Agriculture").

4

total amount expended by the Secretary of Agriculture[5] from the Tobacco Trust Fund over the ten-year transition period may not exceed $10.14 billion.  7 U.S.C. § 518f.

In determining a particular manufacturer's or importer's assessment, the Secretary of Agriculture, acting through the Commodity Credit Corporation, imposes quarterly assessments under a two-step procedure set out in 7 U.S.C. § 518d.  7 U.S.C. § 518d(b)(1).  First, the Secretary makes an allocation of the total amount required for quarterly assessments among six classes of tobacco products, one of which is "cigar manufacturers and importers,"[6] based on each class's share of "gross domestic volume."  See id. § 518d(c)(1) & (2).  "Gross domestic volume" is the volume of domestic products "removed" (as defined in 26 U.S.C. § 5702, that is, removed from the factory or from internal revenue bond, or released from customs custody)[7] and not exempt from tax under chapter 52 of the

---

[5]    For purposes of FETRA, "Secretary" means the Secretary of Agriculture.   Pub. L. 108-357 § 621(11) (codified at 7 U.S.C. § 518(11)).

[6]    The remaining classes of tobacco products are cigarettes, snuff, roll-your-own tobacco, chewing tobacco, and pipe tobacco.  7 U.S.C. § 518d(c)(1).

[7]    While "removed" is not defined in section 5702, "removal" and "remove" are.   Both "removal" and "remove" mean "the removal of tobacco products . . . from the factory or from internal revenue bond under section 5704 . . . or release from customs custody."  26 U.S.C. § 5702(j).

Internal Revenue Code. Id. § 518d(a)(2).[8] FETRA set out the initial allocation among the six classes for fiscal year 2005 and directed the Secretary of Agriculture to periodically adjust the class percentages thereafter. FETRA set the initial allocation for cigar manufacturers and importers at 2.783 percent of the total quarterly assessment and provides for annual adjustments thereafter. Id. § 518d(c); see 7 C.F.R. § 1463.5(c) (division of national assessment among each class of tobacco adjusted annually).[9] If the Secretary determines that the assessment imposed will be insufficient to carry out the buyout payments required during a fiscal year, FETRA directs him to assess such additional amounts as deemed necessary. 7 U.S.C. § 518d(c)(3).

Second, the assessment for each class of tobacco product is allocated on a pro-rata basis by each manufacturer's and importer's share of gross domestic volume that was "removed" in

---

[8]  Section 518d(a)(2)(B) also exempts products taxed under the Harmonized Tariff Schedule of the United States, which is not relevant here.

[9]  The allocation by class is determined "by each class's share of the excise taxes paid using the tax rates that applied in fiscal year 2005." 7 C.F.R. § 1463.5(a).  Setting the excise tax rates to those for fiscal year 2005 benefits cigar manufacturers, as new excise tax rates adopted in 2009 were proportionately raised more for cigars and roll-your-own tobacco than for other classes.  Tobacco Transition Payment Program; Tobacco Transition Assessments, 75 Fed. Reg. 76921-01, 76922 (Dec. 10, 2010) (final rule amending 7 C.F.R. § 1463.5). See Philip Morris USA Inc. v. Vilsack, --- F. Supp. 2d ---, No. 3:11CV87-HEH, 2012 WL 4788571 (E.D. Va. Oct. 9, 2012) (upholding use of 2005 rates).

the prior quarter. Id. § 518d(b)(1) & (e)(1). The volume of gross domestic sales is calculated based on gross domestic volume. Id. § 518d(g)(2). For cigars and cigarettes, the gross domestic volume is measured by "the number of cigarettes and cigars." Id. § 518d(g)(3)(A).[10] Thus, a large cigar manufacturer's or importer's FETRA assessment is based on the number of units sold.[11]

At this point, the calculation of a particular tobacco manufacturer's or importer's assessment for each quarterly payment period is straightforward: (1) the total amount of the assessment for the quarterly payment period for the class of product as a whole is multiplied by (2) the market share of the manufacturer or importer, as calculated with respect to that payment period, of the class of tobacco product. Id. § 518d(f); 7 C.F.R. § 1463.7. "Market share" is "the share of each manufacturer or importer of a class of tobacco product . . . of

---

[10] The Secretary of Agriculture has taken the position that the determination by number rather than weight -- the "per stick" method -- is mandated for all cigars, large and small alike, by 7 U.S.C. § 518d(g)(3)(A). See 7 C.F.R. § 1463.7(b)(1), (c). But see Prime Time Int'l Co. v. Vilsack, 599 F.3d 678, 681, 683 (D.C. Cir. 2010) (remanding a small cigar manufacturer's challenge to its FETRA assessment to the district court with instructions to remand to the Department of Agriculture for further proceedings because FETRA did not appear subject to a single interpretation in this respect).

[11] As will be seen, this differs from the determination of excise tax for large cigars under 26 U.S.C. § 5701(a)(2), which is based on a percentage of "price," subject to a tax cap of 40.26 cents per large cigar. Thus, inclusion of FETRA assessments in "price" will increase excise tax liability for large cigars under section 5701(a)(2).

7

the total volume of domestic sales of the class of tobacco product during the base period for a fiscal year for an assessment." 7 U.S.C. § 518d(a)(3). Thus, for example, if a cigar manufacturer held 33-1/3% of the cigar market and the allocation for the class of cigar manufacturers and importers was 3%, the manufacturer would be assessed 33-1/3% times 3%, or 1%, of the total assessment for all tobacco products.

Thirty days prior to the end of each quarter during the calendar year, domestic manufacturers and importers of tobacco products are to receive notice from the Commodity Credit Corporation of, among other things, the national assessment, the percentage of the national assessment allocated to each class and the total amount of assessment for each class, the adjusted market share of the domestic manufacturer or importer, and the individual manufacturer's or importer's assessment. 7 C.F.R. § 1463.8. The assessed amount must be paid by the last day of the quarter. 7 C.F.R. § 1463.9. Challenges to any assessment must be made to the Secretary of Agriculture under procedures established by the Secretary, with further review by a district court after exhaustion of an agency appeals process. 7 U.S.C. § 518d(i), (j).

The Secretary of Agriculture is required to use the funds in the Tobacco Trust Fund to make contract payments to tobacco quota holders and producers of quota tobacco. Id.

§ 518e(b)(1)(A). Thus, tobacco manufacturers and importers make payments to the Tobacco Trust Fund held by the Commodity Credit Corporation from which the Secretary of Agriculture, through the Commodity Credit Corporation, makes payments to tobacco quota holders and producers. 7 U.S.C. § 518e(a)(1), (b)(1)(A); 7 C.F.R. §§ 1463.9, 1463.100(a).

With this background, the court turns to the issues presented by the parties.

## II. ANALYSIS

### A. Internal Revenue Code: Federal Excise Tax on Large Cigars

Federal excise taxes for large cigars are calculated pursuant to 26 U.S.C. §§ 5701(a)(1) and 5702(*l*) and related regulations. Both sections are contained within chapter 52 of the Internal Revenue Code. Section 5701(a)(2) currently imposes an excise tax on large cigars "equal to 52.75 percent *of the price for which sold* but not more than 40.26 cents per cigar." 26 U.S.C. § 5701(a)(2) (emphasis added). Determination of "price" is set forth in section 5702(*l*), which provides:

Determination of price on cigars.--

In determining price for purposes of section 5701(a)(2)-

(1) there shall be included any charge incident to placing the article in condition ready for use,

(2) there shall be excluded –

9

> (A)     the amount of the tax imposed by this
>         chapter or section 7652, and
>
> (B)     if stated as a separate charge, the
>         amount of any retail sales tax imposed
>         by any State or political subdivision
>         thereof or the District of Columbia,
>         whether the liability for such tax is
>         imposed on the vendor or vendee, and
>
> (3) rules similar to the rules of section 4216(b)
>     shall apply.

26 U.S.C. § 5702(*l*).[12]  The excise taxes imposed on manufacturers and importers by section 5701 are determined, like the FETRA assessments, at the time of "removal" of the large cigars.  Id. § 5703(b)(1).[13]

The Trustee asserts principally that FETRA assessments are expressly excluded from the "price" of large cigars under section 5702(*l*)(2)(A) and, alternatively, are not included in the "price" in the first place under section 5702(*l*)(1).  The Government disputes both contentions.  The parties agree that the treatment of the FETRA assessment in connection with the federal excise tax on large cigars is a matter of first impression.

---

[12]  Section 7652, referenced in section 5702(*l*)(2)(A), governs tobacco product shipments from Puerto Rico and the Virgin Islands.  26 U.S.C. § 7652.  It is not relevant to the present case.

[13]  Each manufacturer of tobacco products must file, for each factory, a semimonthly tax return for each return period on Form 5000.24.  27 C.F.R. § 40.162; see 26 U.S.C. § 6302 ("Mode or Time of Collection").  The semimonthly return must be filed not later than the fourteenth day after the last day of the return period.  27 C.F.R § 40.165(a).

**B.  Exclusion Under 26 U.S.C. § 5702(*l*)(2)**

The Trustee argues first that the FETRA assessment is a tax excluded from "price for which sold" pursuant to section 5702(*l*)(2)(A).  The Government argues that the only taxes excluded from "price" are State and local sales taxes and taxes imposed under chapter 52 of the Internal Revenue Code, which FETRA assessments on their face are not.

**1.  FETRA Assessment as a Tax**

For the Trustee to prevail, he must first demonstrate that the FETRA assessment is a "tax."  Here, the Trustee points to a number of cases in other contexts which he asserts hold various fees and assessments to be taxes.  See, e.g., Robertson v. United States, 582 F.2d 1126 (7th Cir. 1978) (drug transfer taxes); Wyoming Trucking Ass'n, Inc. v. Bentsen, 82 F.3d 930 (10th Cir. 1996) (gasoline excise tax); Burris v. City of Little Rock, 941 F.2d 717 (8th Cir. 1991) (sewer assessments constituted "tax" under Tax Injunction Act).  Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius, --- U.S. ---, 132 S. Ct. 2566 (2012) (holding that the Patient Protection and Affordable Care Act's provision for a "shared responsibility payment" for those failing to comply with the individual mandate to purchase health insurance imposes a "penalty" on those failing to do so for purposes of the Anti-Injunction Act but a "tax" on those without insurance for purposes of the Congress' taxing power).

11

Most pertinent, the Trustee relies on _International Tobacco Partners, Ltd. v. U.S. Department of Agriculture_ (_In re International Tobacco Partners, Ltd._), 468 B.R. 582 (Bankr. E.D.N.Y. 2012), where the court engaged in extensive analysis and held that, in the context of assessing priority of claims in a bankruptcy proceeding pursuant to Bankruptcy Code § 507(a)(8)(E), the FETRA assessment should be construed as an excise tax (as opposed to a regulatory fee). As a result, the court found, the Secretary of Agriculture's claim for unpaid FETRA assessments had priority over other claims. However, the Trustee readily acknowledges that the District Court for the Middle District of Florida, applying a different test in the context of a constitutional challenge (under the Takings Clause, Due Process Clause, and equal protection) construed FETRA not to be a "tax" but rather a "fee," because its primary purpose was regulatory. _See Swisher Int'l, Inc. v. Johanns_, No. 3:05-cv-871-J16-TEM, 2007 WL 4200816, at *7 (M.D. Fla. Nov. 27, 2007) (noting that the FETRA assessment "does not conform neatly to the 'classic' definitions of 'tax' and 'regulatory fee'"), _aff'd on other grounds_, 550 F.3d 1046 (11th Cir. 2008).

As the Government notes, the _International Tobacco_ case was decided in a different context but, as the Government must concede, the _Swisher_ court's conclusion was dicta because the issue was ultimately resolved on the ground that there was no

12

unconstitutional "taking." Consequently, neither case is directly on point. Whether or not the FETRA assessment constitutes a "tax" raises complex considerations and is not easily answered. The court need not engage in the extensive analysis prerequisite to such a determination, however, because even assuming, without deciding, that the assessment constitutes a tax, for the reasons that follow it is not "imposed" by chapter 52 of the Internal Revenue Code, as required by section 5702($l$)(2)(A).[14]

### 2. Taxes Imposed by Chapter 52

Section 5702($l$)(2)(A) requires that to be excluded from "price," the tax must be "imposed by this chapter," meaning chapter 52 of the Internal Revenue Code. "Impose" means to "levy or exact (a tax or duty)." Black's Law Dictionary 824 (9th ed. 2009); see U.S. Const. art. I, § 8, cl. 1 (giving Congress the power to "lay and collect Taxes, Duties, Imposts and Excises").

The court's aim in analyzing section 5702($l$)(2)(A), as in all matters addressing statutory interpretation, is to implement

---

[14] The court need not consider, therefore, TTB's reliance on its document entitled "Frequently Asked Questions," in which the TTB advises that large cigar manufacturers and importers may not exclude FETRA assessments from the taxable price of their product on the grounds that the exclusions in section 5702($l$)(2) are exclusive and that FETRA "assessment payments are not taxes imposed under the IRC [Internal Revenue Code], or State or local taxes." (Doc. 10-1 at 5 (TTB, Tobacco FAQs, T25).)

the intent of Congress. See United States v. Abdelshafi, 592 F.3d 602, 607 (4th Cir. 2010). The court must "first and foremost . . . examin[e] the plain language of the statute." United States v. Passaro, 577 F.3d 207, 213 (4th Cir. 2009). "Absent ambiguity or a clearly expressed legislative intent to the contrary," a statute must be accorded its plain meaning. Abdelshafi, 592 F.3d at 607. "In interpreting the plain language of a statute, [the court] give[s] the terms their 'ordinary, contemporary, common meaning, absent an indication Congress intended [them] to bear some different import.'" Stephens ex rel. R.E. v. Astrue, 565 F.3d 131, 137 (4th Cir. 2009) (quoting N.C. ex rel. Cooper v. Tenn. Valley Auth., 515 F.3d 344, 351 (4th Cir. 2008)).

As the Government points out, the FETRA assessment is codified in Title 7 (§ 518d), which is enforced by the Secretary of Agriculture; it is not contained in chapter 52, which is enforced by the Secretary of the Treasury. The Trustee responds that FETRA's codification in Title 7 does not carry the force of law, citing 1 U.S.C. § 112, which provides that the United States Statutes at Large, not the United States Code, is "legal evidence of laws . . . therein contained, in all the courts of the United States." As a consequence, the Trustee notes correctly, the court is not bound by the codification of the FETRA assessment in Title 7, Chapter 21C, and FETRA must be

14

determined in the context of the entirety of the American Jobs Creation Act of 2004.[15]   He contends that the court should consider the assessment as imposed by chapter 52 of the Internal Revenue Code, based on the reasoning of Guest v. Commissioner, 175 F.2d 868 (5th Cir. 1949), and a subsequent Tax Court case, Marx v. Commissioner, 13 T.C. 1099 (1949).   Because these cases are central to the Trustee's argument, a close examination of them is in order.

Guest arose out of application of the World War II additional 5 percent wartime tax on income -- termed the "victory tax" -- and a savings provision, set forth in then-section 456 of the Internal Revenue Code, that limited total taxes on the income of a single year to 90 percent "over the tax imposed by this chapter [chapter 1]."   The victory tax applied to tax years beginning 1943.   In 1943, however, Congress also

---

[15]   To be sure, the United States Statutes at Large are "legal evidence of the law" as provided by 1 U.S.C. § 112, and the titles of the United States Code only serve as "prima facie" evidence of the law unless they are enacted as "positive law," in which case they too serve as legal evidence of the laws.   Tax Analysts v. Internal Revenue Serv., 214 F.3d 179, 182 n.1 (D.C. Cir. 2000); see 1 U.S.C. § 204(a) ("[W]henever titles of such Code [of Laws of the United States] shall have been enacted into positive law the text thereof shall be legal evidence of the laws therein contained, in all the courts of the United States.").   Title 7 has not been enacted into positive law. See 1 U.S.C.A. § 204, United States Code Titles as Positive Law.   In this case, therefore, the court is not bound by the codifier's placement of FETRA in Title 7.   Cf. United States v. Welden, 377 U.S. 95, 98 n.3 (1964) (holding that when Congress has not enacted a codification as positive law, a change of arrangement by the codifier without the approval of Congress, which places portions of what was originally a single section in two separate sections, "should be given no weight").

15

passed the Current Tax Payment Act of 1943. The purpose of the Current Tax Payment Act of 1943 was to relieve taxpayers from the burden of making two full years' payments in one year (1943) as part of bringing forward the payment of income taxes so that all taxpayers would be put as nearly as possible upon a current basis through implementation of federal income tax withholding. This was accomplished by provisions that in effect collected a full tax for 1942 or 1943, whichever was larger, and forgave the equivalent of 75 percent of the tax for the smaller of the two years. Knox v. Comm'r, 10 T.C. 550, 553-54 (1948). The tax imposed by section 6(a) of the Current Tax Payment Act of 1943, which applied when the tax for 1942 was not greater than the tax for 1943 (which was the case in Guest), was expressly neither part of the victory tax nor codified under chapter 1. Yet the section 6(a) tax increased the taxpayer's chapter 1 tax liability by 25 percent of the forgiven liability for year 1942. Current Tax Payment Act of 1943, Pub. L. No. 43-68, § 6(a), 57 Stat. 126, 145. Although section 456 was silent as to how to treat the tax under section 6(a), the Internal Revenue Service adopted a regulation requiring that the victory tax's 90 percent limitation be computed without regard to the additional tax, thus increasing the taxpayer's liability when making the Current Tax Payment Act of 1943 computations.

Amy Guest applied the section 6(a) additional tax to her victory tax to compute her 90 percent limitation and thus to take advantage of the forgiveness provisions of the Tax Payment Act of 1943, and the Internal Revenue Service assessed a deficiency. Guest challenged the deficiency in the Tax Court. The Tax Court first noted that section 6(a) not only was not enacted as part of chapter 1 but "was not designed to be even an amendment to the chapter, nor indeed to the code itself." Guest v. Comm'r, 10 T.C. 750, 752 (1948), rev'd, 175 F.2d 868 (5th Cir. 1949). The court noted, however, that the tax added by section 6 "in certain respects" was treated as an integral part of chapter 1 tax liability and "in all probability some of the provisions of chapter 1 are applicable to the tax imposed by section 6." Id. at 752-53. But, the court stated further, since the additional tax was "'imposed' in a technical sense by section 6, and not by chapter 1, the question of what taxes Congress intended to include in the computation of the 90 percent limitation remains at best ambiguous." Id. at 753. Ultimately, the court concluded that the additional tax was imposed by section 6(a), not chapter 1, and, therefore, was not subject to section 456's limitation applicable to "the tax imposed by" chapter 1. Id. at 753-54.

The Fifth Circuit reversed. The court observed that the Commissioner and the Tax Court, for certain purposes, had

previously recognized the section 6(a) tax to be part of a taxpayer's income tax. <u>Guest</u>, 175 F.2d at 870. The court concluded that the specific provisions of the statute confirmed that the section 6(a) increase in Guest's income tax liability for 1943 was part of her chapter 1 tax for that year. Thus, it held, in applying the 90 percent limitation on her victory tax liability, the tax imposed by chapter 1 must be computed "with full regard to Section 6(a) of the Current Tax Payment Act of 1943." <u>Id.</u> at 869.

Six months after the Fifth Circuit's ruling in <u>Guest</u>, the Tax Court stated in <u>Marx v. Commissioner</u>, 13 T.C. 1099, 1103 (1949), that "[i]t seems unreasonable to suppose that Congress, in enacting the forgiveness feature of the Current Tax Payment Act [of 1943] in Section 6, intended thereby to exclude some of the tax liability of a taxpayer from the computation of a deficiency or from the computation of a rebate, the definitions of which include the words 'imposed by this chapter.'" 13 T.C. at 1103; <u>see</u> <u>McKenna v. Granger</u>, 109 F. Supp. 592, 593 (W.D. Pa. 1953) (quoting <u>Marx</u>). The court explained that the "Current Tax Payment Act of 1943[] intended generally to forgive rather than increase taxes," and "[a] method of computation to accomplish these ends was provided in section 6." <u>Marx</u>, 13 T.C. at 1103. Consequently, the Tax Court concluded, the language of section 6 "may not be entirely clear, but it was apparently intended [by

18

Congress] to amend the tax-imposing provisions of chapter 1,"
and thus the section 6 tax "represents tax imposed by chapter 1,
since it is computed from chapter 1 tax."  <u>Marx</u>, 13 T.C. at
1103.

<u>Guest</u> and <u>Marx</u> are distinguishable from the instant case.
In both <u>Guest</u> and <u>Marx</u>, the relief provisions of the Current Tax
Payment Act of 1943 were integrally and directly related to the
computation of the taxpayer's income tax liability under the
victory tax (and its 90 percent limitation), and the intended
relief under the Tax Payment Act of 1943 would have been
frustrated had it not been read together with section 456's 90
percent limitation.  Moreover, both the victory tax and the
section 6(a) tax were to be administered by the Internal Revenue
Service, a bureau of the Department of the Treasury, as overseen
by the Secretary of the Treasury.

Here, the specific statutory provisions of FETRA do not
demonstrate that the assessments are part of the Debtor's
chapter 52 taxes.  The Trustee is quick to point out that the
Secretary of Agriculture asserted in <u>Swisher</u> that FETRA
assessments are "no different in the final analysis [] than the
excise taxes its [sic] [Swisher] pays pursuant to the Internal
Revenue Code."  <u>Swisher</u>, 2007 WL 4200816, at *6.  But to say
that the FETRA assessment functions no differently from an
excise tax, as this court has assumed for purposes of this case,

19

is far from saying that it is "imposed" by chapter 52.
Nevertheless, the Trustee asks this court to conclude that
Congress intended that the FETRA assessment, which Congress
specifically designated the Secretary of Agriculture to
administer and collect, be considered "an integral part" of
chapter 52, which Congress directed the Commissioner of Internal
Revenue (under the Secretary of the Treasury) to administer and
collect. See 26 U.S.C. §§ 5703-06, 5708-16; id. § 7701(a)(11)
(defining "Secretary" in Title 26 as "Secretary of the Treasury
or his delegate"). Such a leap is unsupported by the statute.[16]

---

[16] It is also unsupported by the legislative history. Before FETRA,
producer contributions and purchaser and importer assessments funded
capital accounts known as the "No Net Cost Tobacco Fund." See 7
U.S.C. §§ 1445, 1445-1, 1445-2, 1445-3 (2002). The purpose of the No
Net Cost Tobacco Program Act of 1982 was "to provide for the operation
of the tobacco price support and production adjustment program in such
a manner as to result in no net cost to taxpayers." Pub. L. 97-218,
96 Stat. 197. The House bill leading to FETRA, as passed for Senate
consideration, provided for buyout payments to be made from the United
States Treasury not to exceed the lesser of an amount equal to the
taxes received by the Treasury under chapter 52 of the Internal
Revenue Code during a five-year period, or $9.6 billion. 2003 Cong.
U.S. H.R. 4520, § 725 (June 17, 2004), received by the Senate June 18,
2004, and placed on Senate calendar June 21, 2004 (108th Cong. 2d
Sess.). Thus, payments would be made from the Treasury, although the
amount would depend primarily on the amount of excise taxes paid under
section 5701(a). By the time of the House Conference Report, however,
funding through a new assessment on tobacco manufacturers and
importers was proposed. H.R. Conf. Rep. 108-755, reprinted in 2004
U.S.C.C.A.N. 1341, 1518, 2004 WL 2335174 (reporting on Conference
Agreement). The final version of FETRA, enacted as part of the
American Jobs Creation Act of 2004, adopted the funding mechanism
which employed the assessment program currently administered by the
Secretary of Agriculture. Thus, the legislation as enacted, which
imposed FETRA assessment payments on manufacturers and importers
separately from the excise tax payments required under chapter 52, was
intended to free the Government from making net expenditures from the
Treasury.

20

Drawing from the Tax Court's statement in <u>Marx</u> that the section 6 tax "represents tax imposed by chapter 1, since it is *computed from* chapter 1 tax," <u>Marx</u>, 13 T.C. at 1103 (emphasis added), the Trustee argues that FETRA assessments are chapter 52 taxes because they are computed from chapter 52 information. FETRA does refer to chapter 52 for purposes of determining the manufacturer's FETRA allocation. Specifically, it defines "gross domestic volume," for purposes of calculating the allocation among tobacco product classes and a manufacturer's allocation within its class, as the volume of tobacco products that are "removed (as defined by section 5702 of title 26)" and "not exempt from tax under chapter 52 at the time of their removal under that chapter." 7 U.S.C § 518d(a)(2)(A) ("Definitions"). FETRA also requires that when manufacturers and importers file returns and forms with Treasury's TTB that relate to (1) tobacco products removed into domestic commerce (defined by section 5702 of the Internal Revenue Code) and (2) the payment of taxes under chapter 52, they also submit a copy to the Secretary of Agriculture. <u>Id.</u> § 518d(h)(2).

But these references to chapter 52 are solely to identify the sources of information required by the Secretary of Agriculture to calculate the "volume of domestic sales" from which the FETRA assessment is calculated. The fact that FETRA bases its allocation on the volume information contained in the

21

returns and forms, which manufacturers and importers are required to certify, for purposes of computing excise taxes under section 5701, however, does not thereby render FETRA assessments "imposed" under chapter 52. Rather, such information serves a dual purpose: computation of federal excise taxes, and computation of the FETRA assessment. In this way, FETRA differs from <u>Marx</u>. In <u>Marx</u>, the additional tax under section 6(a) was computed directly from the chapter 1 income tax; here, FETRA refers to chapter 52 only for purposes of determining the volume information for computation of the FETRA assessment.

Given the structure of the FETRA scheme and the excise tax provisions for large cigars, it would not be a stretch to conclude that Congress *could* have intended that FETRA assessments be treated like other excise taxes on tobacco products and, thus, treated as imposed by chapter 52. Indeed, chapter 52 is part of Subtitle E to Title 26, which governs "Alcohol, Tobacco, and Certain other Excise Taxes" and specifically addresses taxes on tobacco products, including large cigars. For all tobacco products other than large cigars, (cigarettes, snuff, roll-your-own tobacco, chewing tobacco, small cigars, and pipe tobacco), Congress imposed federal excise taxes based on units sold. 26 U.S.C. § 5701(a)(1), (b), (e), (f), and (g). Only for large cigars are excise taxes imposed

22

based on price. 26 U.S.C. § 5701(a)(2). Thus, to the extent the FETRA assessment is included in a large cigar's price, it is the only tobacco product for which the FETRA assessment increases the federal excise tax burden in this fashion.

In this light, it might appear incongruous that in enacting FETRA Congress would have intended to single out large cigars for such an increase in federal excise taxes. FETRA itself distinguishes the various classes of tobacco products only for purposes of the allocation of the total amount of assessments for a given year. See 7 U.S.C. § 518d(c). Indeed, FETRA does not mention "large cigars" at all, and FETRA assessments are not calculated based on their price. It may well be that Congress never considered FETRA's effect on the excise tax imposed on large cigars under section 5701(a)(2). Yet, mere oversight aside, the Trustee points to nothing in the legislative history or the statutes which leads to the conclusion that Congress *intended* FETRA's assessments on large cigars to be considered imposed by chapter 52. In fact, for purposes of determining federal excise tax, Congress has long treated large cigars differently from other tobacco products. It is not this court's province to engage in policy determinations as to the propriety of such treatment.[17]

---

[17] The Trustee has not raised any constitutional challenge to the tax treatment of large cigars in this case, so none is considered here.

23

As noted above, the Trustee correctly observes that FETRA does not specify where its transition payment provisions (set out in Subtitle B to Title VI of Public Law 108-357) were to be codified. It is noteworthy that Subtitle A of FETRA ("Termination of Tobacco Quota Program and Related Provisions") amended or deleted legislation that previously had been codified in Title 7 ("Agriculture"). And, as noted, FETRA assessments are to be administered by the Secretary of Agriculture and a corporation within the Department of Agriculture, the Commodity Credit Corporation. The transition payments replace the quota program and related provisions already codified in Title 7. Moreover, the enforcement mechanisms and penalties for failure to comply with the FETRA requirements are vested in the Secretary of Agriculture, not the Treasury or any of its bureaus. 7 U.S.C. § 518d(h)(3). At a minimum, these factors are inconsistent with a conclusion that Congress intended that the FETRA assessments be considered imposed by chapter 52.[18]

In addition, a determination that the FETRA assessment is imposed by chapter 52 of the Internal Revenue Code would be at

_____

[18]  Admittedly, the preamble to the enrolled bill forwarded to the President for signing did state: "To amend the Internal Revenue Code of 1986 to remove impediments in such Code and make our manufacturing service, and high-technology businesses and workers more competitive and productive both at home and abroad." H.R. 4520 (October 21, 2004) (enrolled bill). Although much of the American Jobs Creation Act of 2004 addressed amendments to the Internal Revenue Code, the Act was not limited to amendments to the Code. Further, this language also appeared in H.R. 4502 as introduced, which contemplated funding through the Treasury and prior to amendments which led to assessments on tobacco manufacturers and importers. See 2003 Cong. U.S. H.R. 4520, 108th Cong., 2d Sess. (June 4, 2004) (introduced in the House).

odds with the approach Congress articulated in the American Jobs Creation Act of 2004 for when to construe an amendment as one to the Internal Revenue Code.[19]  Section 1(b) of the American Jobs Creation Act of 2004 provides that, "[e]xcept as otherwise expressly provided, whenever in this Act an amendment or repeal is expressed in terms of an amendment to, or repeal of, a section or other provision, the reference shall be construed to be made to a section or other provision of the Internal Revenue Code of 1986."  In accord with this, whenever the Act amends or adds a new section intended to be incorporated into the Internal Revenue Code, it names a section or part of the Internal Revenue Code and then states that it "is amended by inserting after section [specified Code section] the following new section" or "is amended by adding at the end the following new section," followed by the new Internal Revenue Code section number and text.[20]  FETRA Subtitle B (codified at 7 U.S.C. §§ 518-518f), by contrast, makes no reference that it is "amending" or

---

[19]  Following the statutory provision of 1 U.S.C. § 204 is provided a list of U.S. Code Titles enacted as positive law, which is followed by the heading "Title 26. Internal Revenue Code" and the sentence:  "The sections of Title 26, United States Code, are identical to the sections of the Internal Revenue Code."  Because chapter 52 is contained in Title 26, it is apparent that Congress's reference to the Internal Revenue Code in the American Jobs Creation Act of 2004 should be construed as a reference to Title 26 and its chapters.

[20]  See Pub. L. 108-357, §§ 102, 244, 245, 246, 301, 302, 303, 338, 339, 422, 801, 805, 811, 812, 842, 848, 854, 859, 861, 863, 866, 881, 884, 908.

"repealing" anything.[21]   Pub. L. 108-357, §§ 621-627, 118 Stat. 1524-34.   Congress's stated means for identifying when provisions of the American Jobs Creation Act of 2004 should be construed as amendments to the Internal Revenue Code is simply not employed in the FETRA-related provisions at issue here.

In summary, while reasonable minds could differ as to whether there are good reasons for Congress to have excluded the FETRA assessment from calculation of federal excise tax for large cigars, the court concludes that the Trustee has failed to bridge the gap from a conclusion that the FETRA assessment is a tax to a finding that the tax is "imposed" by chapter 52.   This conclusion requires the court to turn to the Trustee's second argument: that the FETRA assessment is not included as a "charge incident to placing the article in condition ready for use" under section 5702($l$)(1).

### C.   Charges Included Under 26 U.S.C. § 5702($l$)(1)

The Trustee argues in the alternative that the FETRA assessment is not "included" under section 5702($l$)(1) as a "charge incident to placing the article in condition ready for use."   He raises two grounds: (1) the FETRA assessment is in the nature of a "transportation, delivery or other charge" excluded under 26 U.S.C. § 4216(a) because it is incurred after the

---

[21]   Subtitle A, moreover, does refer to amendments and repeals approximately 24 times, but in doing so refers to legislation codified in Title 7, not chapter 52.

cigars are "in condition packed ready for shipment"; and (2) the expense of FETRA assessments is not an expense associated with manufacturing, importing, or selling cigars. (Doc. 3 at 30-31 (Ex. C, Memorandum in Support of Debtor's Objection to Claim for Administrative Expenses and Motion for Determination of ABI's Federal Excise Taxes, at 18-19).) If the FETRA assessment is not a section 5702(*l*)(1) charge, the Trustee asserts, then it is not included in the price of large cigars to begin with and cannot be the basis for computing federal excise tax under section 5701(a)(2). The Government contends that FETRA assessments fall within the broad statutory language of "charge incident to placing [large cigars] in condition ready for use" and are not otherwise excluded from price under 26 U.S.C. § 4216(a).

As a preliminary matter, the Government argues that the phrase "there shall be included any charge incident to placing [the large cigars] in condition ready for use" is illustrative and not limiting, noting that Internal Revenue Code § 7701(c) defines "includes" and "including" as "not be[ing] deemed to exclude other things otherwise within the meaning of the term defined." 26 U.S.C. § 7701(c). The Government also cites In re Joplin, 882 F.2d 1507, 1511 (10th Cir. 1989), which addressed the term "including" within the meaning of 26 U.S.C. § 651(a).

From this, the Government asserts, section 5702(*l*) should be given an expansive reading.

But section 5701(a)(2) uses the word "included," not "includes" or "including," as found in section 7701(c) and Joplin. "Includes" and "including" are often used in statutes to provide examples of a general term. The phrase "there shall be included" as used in section 5702(*l*)(1), in contrast, is different. It describes what *to do* with the item in question (i.e., include it or not), not *whether* some unspecified item is of the type to be considered for inclusion. Section 7701(c)'s use of "includes" and "including" but not "included" in its definition reflects this distinction. Thus, the dependent language "any charge incident to placing [the large cigars] in condition ready for use" describes the entire scope of what is "included" in the price for purposes of section 5702(*l*)(1).[22]

This conclusion does not mean that only direct expenses (or charges) related to the large cigars in question are included.

---

[22] At the June 7, 2012 hearing, the Trustee suggested that an evidentiary hearing would assist the court in determining whether the FETRA assessment was a "charge incident to placing [large cigars] in condition ready for use." The court declined the suggestion, noting that the question was one of law and that what the Debtor considered "incident to" would not be helpful to the court in determining the present issue, which focuses on what Congress intended. See Stephens ex rel. R.E. v. Astrue, 565 F.3d 131, 137 (4th Cir. 2009) (noting a question of statutory interpretation is "a quintessential question of law"). Further, the evidence to have been presented undoubtedly would focus on preparation and packaging of cigars, manufacturing costs, and the like, as well as the timing of those events, all of which were sufficiently covered in the Trustee's briefing (see, e.g., Doc. 3 at 30-31).

All charges "incident to" making the large cigars in condition ready for use are included in "price." Black's Law Dictionary defines "incident" as "[d]ependent upon, subordinate to, *arising out of, or otherwise connected with* (something else, usu. of greater importance)" (emphasis added). <u>See</u> Black's Law Dictionary 830 (9th ed. 2009). Phrases such as "arising out of" and "connected with" are expressly broad. <u>Cf.</u> <u>Long v. Silver</u>, 248 F.3d 309, 313 (4th Cir. 2001) (referring to arbitration clause for "[a]ny and all disputes . . . arising out of or in connection with" as "very broad"). Thus, the question can be viewed as whether the FETRA assessment arises out of or is otherwise connected with "placing [the large cigars] in a condition ready for use." "Condition" simply refers to a "state of being; an essential quality or status." Black's Law Dictionary 335 (9th ed. 2009). "[Condition] ready for use," therefore, refers to a large cigar fit for its intended use (i.e., to be smoked) which is in a form (package) which can be directed to the buyer.

The Trustee relies on the application of 26 U.S.C. § 4216(a), although it is not specifically referenced in section 5702(*l*).[23] The TTB similarly relies on section 4216(a) inasmuch

---

[23] Section 5702(*l*)(3) references section 4216(b), which applies "[i]f there is any question concerning the applicable sale price for tax purposes." 27 C.F.R. § 40.22(b)(1). Section 4216(b), however, addresses "constructive sales price" for cigars sold by a manufacturer at retail, sold on consignment, or sold (otherwise through an arm's

as one of its Industry Circulars applies that section to determinations of large cigar "price." <u>See</u> Dep't of Treasury, TTB, Industry Circular No. 2011-03 (April 26, 2011) (referencing Industry Circular 91-3, which concluded that in determining the "price" of large cigars "rules similar to 26 U.S.C. § 4216(a) and the regulations issued thereunder will apply").[24] Both parties obviously draw different conclusions from that statute.

Section 4216(a) provides:

> In determining, for purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of

---

length transaction) at less than the fair market price and does not appear to apply to the matter before the court.

[24] By comparison, TTB's regulations for computing the tax imposed on large cigars under section 5701(a)(2) define "sale price" (a term not used in that statute) as "the price for which the large cigars are sold by the manufacturer." 27 C.F.R. § 40.22(a) ("Determination of sale price of large cigars"). Manufacturers are required to keep a record of tobacco products removed and "must make entries in this record at the time of removal" and, for each removal must show, for large cigars, "the sale price." <u>Id.</u> § 40.184(a); <u>see id.</u> § 40.187 (requiring manufacturer "who removes large cigars from the factory [to] keep such records as are necessary to establish and verify the price for which the cigars are sold, in accordance with § 40.22"). Similar provisions apply with respect to large cigar importers. <u>See</u> 27 C.F.R. §§ 41.11, 41.39, 41.81, 41.181. To be sure, an administrative agency's interpretation of its statute does not control a court's interpretation; in the absence of clear congressional direction, the court must still determine if the agency's interpretation is permissible. <u>See</u> <u>United States v. Mead Corp.</u>, 533 U.S. 218, 230-31 & n.12 (2001); <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984); <u>Hosh v. Lucero</u>, 680 F.3d 375, 378-79 (4th Cir. 2012). Agency interpretations that do not contain the force of law, like agency manuals and policy statements, are afforded respect by the courts "to the extent that they possess the 'power to persuade.'" <u>Minor v. Bostwick Laboratories, Inc.</u>, 669 F.3d 428, 438 (4th Cir. 2012) (citing <u>Christensen v. Harris Cnty.</u>, 529 U.S. 576, 587 (2000) (quoting <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944))).

whatever nature, *and any charge incident to placing the article in condition packed ready for shipment*, but there shall be excluded the amount of tax imposed by this chapter [chapter 32], whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Secretary in accordance with the regulations.

26 U.S.C. § 4216(a) (emphasis added).[25] Focusing on the highlighted language, the Trustee argues that the FETRA assessment is not an expense incidental to placing the cigars "in condition packed ready for shipment" but, instead, is an "after-the-fact government exaction" and is in the nature of a transportation, delivery, or other charge. (Doc. 6-5 at 19.) Noting that the Debtor's loading dock is within its factory and that cigars at the loading dock are "packed ready for shipment," the Trustee contends that as of that time the cigars have not been "removed" for purposes of section 5701(a)(2) yet are "in a condition ready for use." The Trustee asserts that, like a transportation or delivery charge, the FETRA assessment is incurred *after* the large cigars have been shipped and therefore cannot be necessary for packaging the large cigars and readying them for shipment or use.[26]

---

[25]  Chapter 32, to which section 4216(a) refers, imposes excise taxes on a host of products, including coal (26 U.S.C. § 4121), vaccines (id. § 4131), and sporting goods (id. § 4161).

[26]  The TTB's March 19, 1991 Industry Circular 91-3, in referencing section 4216(a) and regulations issued thereunder, provides:

31

In one sense, it could be said that because the FETRA assessment is calculated based on the Debtor's cigars that were removed during the prior quarter, it is not assessed as a direct cost of the large cigars actually sitting on the loading dock. However, the Debtor does include estimates of its FETRA assessments in its price for the large cigars on the dock (presumably in order to maintain a stable price), which are passed on as part of those products' sale price. In this sense, therefore, the assessment is a cost of sale for the products sitting on the loading dock.

The Trustee's attempt to equate the assessment with a transportation, delivery or other charge is not persuasive. As

---

The "price" for which cigars are sold includes the total consideration for the cigars in the form of money, services or other things. Any charge which is made incident to placing the cigars in condition ready for use is included in the sale price. *That is, any charge which is required by a manufacturer or importer to be paid as a condition of its sale of the cigars* (and which is not attributable to an expense falling within one of the exclusions described below) is includable in the taxable sales price.

(Doc. 10-1 (original emphasis deleted and emphasis added).) The "exclusions described below" include federal excise tax imposed under 26 U.S.C. §§ 5701 and 5702, retail sales taxes, and "[a]ctual expenses of [sic] charges incurred for transportation, delivery, insurance, and other expenses in connection with the delivery of cigars to a purchaser pursuant to a bona fide sale [which] shall be excluded from the sale price in computing the tax." (Doc. 10-1.) "A charge or expense not within the scope of the above described items, whether or not separately stated, may not be excluded in computing taxable sale price unless it can be shown that the charge or expense is not properly to be included as a manufacturing, importing or selling expense or is in no way incidental to placing the cigar in condition packed ready for shipment." (Id.)

the Supreme Court noted in <u>F.W. Fitch Co. v. United States</u>, 323 U.S. 582, 584-85 (1945), those exceptions were intended to cover costs that are not necessarily a component of the f.o.b. ("free on board") selling price. Transportation, delivery, insurance, and installation costs are not necessarily part of the selling price as the product is sitting on the manufacturer's dock and are excluded if properly established. <u>Id.</u> at 586. The phrase "other charge" is limited "to expenses similar in character to those incurred for transportation, delivery, insurance and installation." <u>Id.</u> at 584-85 (holding that advertising and selling expenses incurred by a manufacturer "clearly fall within the class of charges which Congress intended to be included in the tax base" as "they enter into the composition of the wholesale selling price"). Of critical import, the Court, noting the legislative history, concluded that "any additional charge which a purchaser would not be required to pay if he accepted delivery of the article at the factory or place of production may be so excluded." <u>Id.</u> at 584.[27] Here, the Debtor

_____

[27] Indeed, consistent with <u>F.W. Fitch</u>, the agency's regulations for section 4216 state that transportation costs related to moving the product from a factory or port of entry to a warehouse or other facility in connection with the delivery of the product are not considered incurred in connection with its delivery and must be included in sale price for computing tax liability. The regulations also provide that "other charges" may not be excluded from taxable sale price "unless it can be shown by adequate records that the charge or expense properly is not to be included as a manufacturing or selling expense or is in no way incidental to placing the article in

includes its estimated FETRA assessments in the price a purchaser would be required to pay wherever accepting delivery.

Followed to its logical conclusion, moreover, the Trustee's argument leads to the inevitable result that all taxes (federal, state, and local) are outside the ambit of charges "incident to placing the article in condition ready for use" because they may not be calculated until after the product is made ready for use and, in fact, removed. This conclusion would render superfluous (or redundant) section 5702($l$)(2), which specifically excludes certain taxes -- those imposed by chapter 52 as well as retail sales taxes imposed by any State or political subdivision, if stated separately, even though they may be imposed post-removal -- from inclusion as part of "price."[28] If such taxes were not included in the "price" calculation under section 5702($l$)(2) in the first place, there would be little need for Congress to have excluded them in subsection (2). Notably, section 5702($l$)(2) does not exclude all taxes paid by the manufacturer or importer, only those specified. And, other selling expenses incurred after removal (such as national advertising) are not excluded, either. <u>See, e.g.</u>, 26 U.S.C. § 4216(e).

---

condition packed ready for shipment." 26 C.F.R. § 48.4216(a)-2 (b) & (c).

[28] By exempting only state and local retail sales taxes when "stated as a separate charge," this provision necessarily contemplates inclusion of certain taxes that are paid as part of the price sold.

34

For all these reasons, therefore, the court concludes that the FETRA assessment is a charge incurred "incident to" placing large cigars in a condition ready for use within the meaning of section 5702(*l*)(1).

### D. Additional Disputes between the Parties

The Trustee's Objection asserts that the Debtor is entitled to a net refund of $272,464.10 for overpaid federal excise taxes. (Doc. 3 at 9 (Ex. B at 3).) The parties have discussed various alleged refunds, credits, and offsets due. (See, e.g., Doc. 6-4 at 3; Doc. 6-5 at 19-20; Doc. 10 at 14; Doc. 13 at 7.) The court need not resolve the specific dollar amounts or offsets now but leaves it for further consideration following referral of this matter to the Bankruptcy Court. To the extent the parties have raised additional issues as to the technical calculation of FETRA assessments and/or excise taxes, they are outside the scope of the limited issue for which the referral was withdrawn and may be addressed by the Bankruptcy Court in accord with this Memorandum Opinion and Order.

### III. CONCLUSION

For the reasons stated above, the court finds that FETRA assessments are included in, and are not excluded from, the determination of price for the purpose of computing the excise tax imposed by 26 U.S.C. § 5701(a)(2). The court's holding applies to all large cigar sales by the Debtor, both during and

35

outside the period at issue here. This matter will be referred to the Bankruptcy Court for further proceedings, including determination of the amount of excise tax subject to the Government's Claim, consistent with this Memorandum Opinion and Order. See 11 U.S.C. § 505(a)(1).

IT IS THEREFORE ORDERED that the Debtor's Objection to Claim for Administrative Expense And Motion For Determination of ABI's Federal Excise Taxes (Doc. 6-4) is DENIED to the extent stated herein, and this matter is REFERRED to the Bankruptcy Court for further proceedings consistent with this Memorandum Opinion and Order.


                                    /s/   Thomas D. Schroeder
                                    United States District Judge

November 6, 2012